IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Micaela K. Vermillion and Bobby L. Burns, | : | |
| | : | Civil Action 2:11-cv-00949 |
| Plaintiffs | : | |
| v. | : | Magistrate Judge Abel |
| CMH Homes, Inc., *et al.*, | : | |
| Defendants | | |

# ORDER

This matter is before the Court on defendants' March 27, 2012 motions for summary judgment on plaintiff's third claim for violation of the Magnuson-Moss Warranty Act and to compel arbitration of plaintiff's remaining claims and stay proceedings pursuant to the Federal Arbitration Act (doc. 13). Defendants seek to compel arbitration of all of plaintiffs' claims except for their claim for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, for which defendants seek summary judgment on the basis that the Act does not apply to the sale of an off-frame modular homes which is real property under federal law.

  I.  **Allegations in the Complaint**

CMH Homes, Inc. ("CMH Homes") manufactures, builds, sells, finances, leases, insures and warrants manufactured and modular homes. Compl. at ¶ 4. Freedom

1

Homes, an authorized agent and representative of CMH Homes, sells, warrants, and designs manufactured and modular homes. *Id.* at ¶¶ 6-7.

In March 2004, plaintiffs entered into an agreement to purchase a Freedom Homes custom built home. *Id.* at ¶ 19. The Freedom Homes manager informed plaintiffs that a Nantucket model had been ordered for display purposes and that adjustments could be made upon its arrival "to make it their dream home." *Id.* at ¶¶ 22-23. Defendant represented to plaintiffs that by purchasing the display model home, it would be a "turn-key operation," allowing for quicker installation and an accelerated move-in for plaintiffs. *Id.* at ¶ 24. Plaintiffs agreed to purchase the display model. *Id.* at ¶ 25.

On May 27, 2004, plaintiffs placed an order through Freedom Homes for the home. *Id.* at ¶ 27. Plaintiffs entered into a "Retailer Closing Agreement." *Id.* at ¶ 28. The Agreement provided that Dennis Excavating and Performance Plumbing and Heating were the subcontractors that would complete the excavation and basement required for installation of the home. *Id.* at ¶ 31. In July 2004, defendant steered plaintiff to its contractor, Riggs Excavating, Inc. to perform the excavation. *Id.* at ¶ 33.

Throughout the construction process, defendant buried and/or burned all the garbage related to the construction and installation of the home rather than using a trash receptacle forcing plaintiffs to install gravel to repair the damage that resulted. *Id.* at ¶¶ 38-39.

2

A November 2004 inspection of the house revealed numerous concerns involving the vapor barrier in the attic, the grading and drainage of the ground and land water, and the insulation. *Id.* at ¶ 40. Defendant assured plaintiffs that all of the deficiencies would be remedied prior to the move-in date *Id.* at ¶ 41.

After moving into the home, plaintiffs noted water gathering in the front yard, the smell of mold throughout the home, cracks in the ceiling, and splitting and cracking of the hardwood and tile floors. *Id.* at ¶ 47. During the summer of 2005, plaintiffs' children were unable to use their bedrooms upstairs because the temperatures reached over 100 hundred degrees in the second story. *Id.* at ¶ 48. In February 2006, the second floor could not be used because of the inability to heat it. *Id.* at ¶ 53. Over the course of the next two years, defendants contracted with various companies to perform repairs or attempt to repair the multiple problems experienced by plaintiffs. *Id.* at ¶ 55.

In 2006, defendants attempted to coerce plaintiffs into signing a release of responsibility. *Id.* at ¶ 60.

Plaintiffs sought an independent inspection of the house. *Id.* at ¶ 66. The inspection revealed numerous substantial structural problems. *Id.* at ¶ 67. Plaintiffs learned that the condition of the second floor was affected by the unrepaired structural problems, which worsened due to the lack of ventilation and mold infestation, rendering the second floor unusable by the summer of 2011. *Id.* at ¶ 68.  On June 2, 2009, defendants hired a professional engineer, Gene Smithberger. Mr. Smithberger opined that the home was not anchored to its foundation and was "free to move."*Id.* at ¶ 70.

The complaint alleges claims for breach of contract, negligent misrepresentation, breach of the Magnuson-Moss Warranty, negligent construction, fraud, breach of implied warranty, negligence, negligence per se, and fraudulent concealment.

## II.     Arguments of the Parties

### A.     Defendants

Defendants argues that plaintiffs' claim for violation of the Magnuson-Moss Warranty Act must be dismissed because the Act does not apply to an off-frame modular homes that has been permanently constructed on a foundation. Defendants maintain that modular homes are real property as opposed to personal property, and, as a result, modular homes are not consumer products under the Magnuson-Moss Warranty Act. The home at issue falls under the Ohio Building code's definition of an "industrialized" or "modular" home. Manufactured homes, on the other hand, are governed by the Housing and Urban Development ("HUD") Code and are constructed on a permanent frame. Defendants rely on *Stanley v. Yates Mobile Services Corp.*, No. 4:07CV00047, 2008 WL 276504 (W.D. Va. 2008) and *Coppernoll v. Custom Housing Center, Inc.*, 488 F. Supp. 2d. 641, 647 (W.D. Mich. 2007).

Defendants further argue that plaintiffs' remaining claims must be submitted to arbitration as required under the contract and that this action must be stayed pending outcome of the arbitration. Federal policy underlying the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, favors arbitration, and courts should rigorously enforce agreements

to arbitrate. Defendants maintain that arbitration is required for all of plaintiffs' claims except for their claim based on the Magnuson-Moss Warranty Act.

### B. Plaintiffs

Plaintiffs argue that the purchased of their home falls within the purview of the Magnuson-Moss Warranty Act because defendants failed to adhere to applicable building codes. Plaintiffs maintain that summary judgment is improper because factual issues remain regarding the unconscionability of the arbitration clause. In the alternative, plaintiffs seek additional time to conduct discovery to permit the issue to be decided on the merits.

Plaintiffs argue that the construction of their home was governed by federal law and that it failed to meet applicable building code standards. According to the paperwork supplied by defendants at the time of purchase, the manufactured home was not governed by or conformed with state housing codes. Instead, CMH Homes' documents provided that "New Homes meet Federal Manufactured Home Standards." Plaintiffs maintain that because the home was governed by federal law, it is subject to the Magnuson-Moss Warranty Act. Plaintiffs further maintain that any ambiguity in the contract must be construed against the drafter.

Plaintiff maintains that this case is distinguishable from the *Stanley* case because in *Stanley* the contract expressly stated that the home would not be considered a consumer product. Plaintiff further argues that this case be distinguished from *Coppernoll* because plaintiffs were informed that the home would meet the Federal

Manufactured Home Standards rather than the state code. Plaintiffs contend that because the home failed to meet any specified set of codes, the home falls within the purview of the Magnuson-Moss Warranty Act. According to plaintiffs, the *Copernoll* Court recognized that the language of an FTC Advisory Opinion provided that coverage under the statute could be extended to any modular home if a plaintiff could make an arguable claim that some defect qualified as a building code violation. Specifically, plaintiff relies on following statement: "a factory built dwelling that fails to satisfy one of the specified sets of codes or a separate state modular code must comply with the requirements of the [Magnuson-Moss Warranty Act]." FTC Advisory Opinion, 90 F.T.C. 980, 981 (1977).

  Plaintiffs further argue that the arbitration clause is unconscionable and unenforceable. Plaintiff maintains that the presumption in favor of arbitration is substantially weaker where the arbitration clause itself is a contract of adhesion, particularly in a consumer case. Unsconscionability is determined by examining the factors surrounding the contracts formation and its contents. Judicial revision is appropriate where there are harsh contractual terms and unequal bargaining positions between the parties.

  Plaintiffs maintain that the arbitration clause is procedurally unconscionable because there was no voluntary meeting of the minds concerning the alleged agreement to arbitrate. The Court should also take into account the relative bargaining position of the contracting parties, including the age, eduation, intelligence, business acumen and

6

experience. Plaintiffs maintain that they had no experience with arbitration or reading or drafting contracts. Plaintiffs have no legal training, nor did they understand the ramifications of the one-sided terms contained in the clause at issue. Plaintiffs only recently learned that because of the incorporation of the clause, their ability to have their case heard will be prohibited given the costs of arbitration. The arbitration clause provides that the arbitration shall be in accordance with commercial arbitration rules notwithstanding the fact the dispute is between a supplier and a consumer. Plaintiffs contend that they had no opportunity to accept or decline the terms of the arbitration provision, and there was no provision in the contract for plaintiffs to separately sign or initial in order to acknowledge review of the arbitration provision.

Plaintiffs also argue that the arbitration clause is substantively unconscionable because the costs of arbitration are prohibitive $6,200 administrative fee for arbitration, $250-500 arbitrator's fee, arbitrator's travel expenses, and witness fees), which would effectively deny plaintiffs a remedy. Plaintiffs also contend that the arbitration clause is one-sided as CMH Homes retains the unilateral right to choose the forum in which to bring their claims. Plaintiffs also argue that they are unable to adequately vindicate their claims under the arbitration terms. The arbitration clause limits depositions to only one individual and any expert designed by another party. Plaintiffs have no rights under the clause to request additional depositions or discovery, which is necessary to satisfy their burden of proof in such a complex case. Plaintiff's case involves defects surrounding the manufacturing, delivery, and installation of the home. No one witness

7

can testify as to all the facts surrounding the manufacture, repair, and damages related to a single claim. Plaintiffs also contend that the arbitration clause does not apply to all of their claims and to all named defendants. Plaintiff's claim arising under the Magnuson-Moss Warranty Act is not arbitratable, and defendant HBOS Manufacturing, LP is also not subject to the arbitration clause. The terms of the arbitration clause are fundamentally one-sided. The purchasers must arbitrate all claims, but CMH revers the unilateral right to assert its claims against the purchasers in court.

In the event that the Court determines it cannot conclude that the arbitration clause is unconscionable based on the evidence before it, plaintiffs seek leave to conduct discovery on the costs arbitration, including the arbitrator's fees, administrative fees, and other additional fees. Plaintiffs also intend to seek evidence concerning the differences between the costs of litigating versus arbitration. Plaintiffs also intend to explore the amount of discovery necessary to properly prosecute this action, including the number of witnesses.

### III. Summary Judgment

#### A. Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

      B.     Discussion

Section 2310(d)(1) of title 15 of the United States Code states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." A "consumer" is a "buyer . . . of any consumer product." 15 U.S.C. § 2301(3). A "consumer product" is "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1).

The Federal Trade Commission ("FTC") issued an advisory opinion which concluded:

> A modular house which meets one of the sets of uniform home construction codes set forth in the appendix to this letter or a construction standard established by a state for modular homes, as distinct from mobile homes as they are defined by the state, is real property and should, therefore, be excluded from the Section 101(1) definition of 'consumer product.' The sets of uniform codes are widely used in the construction of conventional, 'stick-built' homes, which are real property. These codes are usually the basis for any distinct modular housing codes. Thus, a factory built house which satisfied one of these sets of codes or a separate state modular code is essentially of the nature of real property and should, therefore, be excluded from coverage of the Act. On the other hand, a factory built dwelling that fails to satisfy one of the specified sets of codes

or a separate state modular code must comply with the requirements of the Act.

90 F.T.C. 980. Plaintiffs contend that they received documents indicating that their home was subject to the Federal Manufactured Home Standards. This does not change the fact that their home was in fact governed by the state building code and not the federal standards. Plaintiffs do not assert that they believed they were purchasing a manufactured home rather than a modular home. Plaintiffs acknowledge that their home is a modular home.

In *Stanley v. Yates Mobile Services Corp.*, No. 4:07CV00047. 2008 WL 276504 (W.D. Va. Jan. 31, 2008), the defendants moved to dismiss plaintiff's claim on the basis that the Magnuson-Moss Warranty Act did not apply to a modular home. In the complaint, the home was warranted as and represented to be a "manufactured home," but it was actually a "modular home." The *Stanley* Court concluded that the Act does not cover the sale of a modular home and noted that every federal court that had considered the question found that modular homes were not personal property and therefore not consumer products covered by the Act. The court examined the differences between modular homes and mobile or manufactured homes. Under traditional property law, a site-built home is real property rather than personal property. Mobile homes, however, have typically been treated as a type of personal property. *Id.* at *2 (citing *Nowlin v. Tammac Fin. Corp.*, 321 B.R. 678, 682-83 (E.D. Pa. Bankr. 2005). Mobile homes were typically small trailers that were not permanently attached to the land. Manufactured

homes have increased in popularity and replaced what was known as mobile homes. Manufactured homes are larger than mobile homes and frequently have the wheels removed. Although manufactured homes are less mobile than mobile homes, they are still moved in one piece to the site where they are set up. As a results, courts have concluded that manufactured or mobile homes, which are an intentionally mobile product, are governed by the Magnuson-Moss Warranty Act. *Id.*

Courts have distinguished modular homes from manufactured homes and concluded that modular homes are real property rather than personal property. State building regulations for site-build homes also apply to modular homes, but they do not apply to manufactured homes. State laws generally treat site built and modular homes in the same manner and treat manufactured homes differently. The *Stanley* Court also relied on the FTC Advisory Opinion state that a modular home which meets one of the sets of uniform constructions codes or a construction standard established by the state is real property and not a consumer product.

The *Stanley* Court explicitly rejected the plaintiff's arguments that because it was provided with literature describing their home as a manufactured home at the time of the sale, defendants were prevented from characterizing the home as modular home. At the time of the transaction, the parties knew the type of home being sold. Plaintiffs did not expect to receive a manufactured home.

I am persuaded by the reasoning of the decision in *Stanley*. I conclude that a modular home is not a "consumer product" as defined in the Act and that the

Magnuson-Moss Warrant Act does not apply to a modular home. Defendants' motion for summary judgment on plaintiff's claim for breach of warranty is GRANTED.

Plaintiffs further argue that their modular home does not satisfy the exclusion described in the FTC letter because it did not meet the construction standards established by Ohio law because there are defects that violate the Ohio building codes. That is, they would read the language in the letter–"A modular house which *meets* . . . a construction standard established by a state for modular homes . . . is real property. . . excluded from the . . . definition of 'consumer product'"–to mean that if a modular house has defects violating the state code it is not excluded from the definition of "consumer product." (Emphasis added.) However, as defendants argue, that reading would render the letter meaningless. Defective real property would be deemed personal property, while all other real property would not. The Magnusson-Moss Warranty Act applies only to personal property, and under Ohio law plaintiff's modular home is real property. Albeit with the defects pleaded in the complaint, it is a modular house as defined by Ohio's building codes.

**IV.    Arbitration**

By enacting the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Congress declared a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements. . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the

FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Notwithstanding this policy, arbitration is a matter of contract, and a party cannot be forced to submit to arbitration when he has not agreed to resolve a dispute in this manner. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). Section 2 of the Federal Arbitration Act makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts examine the language of a contractual arbitration clause in light of the strong federal policy favoring arbitration. *Stout v. J.D. Byrider,* 228 F.3d 709 (6th Cir. 2000) citing *Soler Chrysler-Plymouth*, 473 U.S.614, 626 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1 990). Any ambiguities in an arbitration clause, or doubts as to the parties' intentions, should be resolved in favor of arbitration. *Soler Chrysler-Plymouth*, 473 U.S. at 626.

When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). To determine whether the parties have entered into a valid arbitration agreement, courts apply state law concerning the validity, revocability and enforceability of contracts. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002). Defenses to an arbitration clause include fraud, duress, or unconscionability. *Id*.

The Retailer Closing Agreement contains the following arbitration agreement:

Buyer and Retailer hereby enter into the following arbitration agreement:

1. Any and all claims for liability, damages or expenses arising out of or in connection with the home, the contract, or any warranties, representations, or agreements relating thereto (hereinafter referred to as "Claims") shall be resolved through binding arbitration in accordance with the American Arbitration Association's commercial arbitration rules before a single arbitrator licensed to practice law in the state in which the home is sold.
2. Each party in such arbitration shall bear their own expenses, and shall be permitted to depose one individual and any expert witness designated by another party.
3. Judgment on the arbitrators' award may be entered in any court of competent jurisdiction.
4. This agreement is for the benefit of not only the parties hereto but also the manufacturer of the home, the holder of the contract, any provider of insurance pursuant to the contract, and their respective directors, officers, employees, agents, subsidiaries, affiliates, successors, assigns and insurance carriers.
5. Notwithstanding anything contained herein, the holder of the contract retains an option to use the judicial or non-judicial relief afforded in the contract and pursuant to applicable laws for the repossession of the home or the recovery of monetary obligations or other security interests held by such holder, which proceedings by the holder shall not constitute a waiver of any party's right to compel arbitration of claims hereunder.
6. The parties hereby voluntarily waive any right to trial by judgment or jury.

Doc. 3-3 at 3. Plaintiffs argue that the arbitration clause is unconscionable and unenforceable.

In considering the enforceability of the arbitration clause, I reviewed *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) and *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003).[1] In *Floss*, the Sixth Circuit recognized that courts examine applicable state law contract principles to determine whether an agreement to arbitrate is enforceable.

Under general contract principles "a promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof." *Id.* at 315. A promise constitutes consideration for another promise only when it creates a binding obligation. Without mutuality of obligation, the contract lacks consideration. If the contract does not bind both parties, then neither party is bound.

The contract at issue concerns the sale of the house. Plaintiffs' obligations under the contract are monetary obligations. Defendants' obligations under the contract concern the manufactureand installation of the home. In the event of any breach by

---

[1] In *Morrison*, the Sixth Circuit distinguished the case from *Floss* by determining that the arbitration agreement was supported by sufficient consideration. Under the agreement, Circuit City had the power to alter or terminate the agreement on December 31 of each year upon giving thirty days' notice to its employees. The *Morrison* Court held that the timing provision, which only permitted Circuit City to unilaterally amend the agreement on a specified date, was enough of a limitation on Circuit City's ability to amend the agreement to constitute consideration. Circuit City did not retain unfettered discretion in deciding whether to unilaterally amend the agreement. Rather, Circuit City could only do so on one day of the year after providing thirty days' notice of its intent to do so.

plaintiffs of their obligations under the contract, defendants retain "an option to use the judicial or non-judicial relief afforded in the contract" for those breaches. Plaintiffs, however, have no such option. In the event of a breach of defendants' obligations, plaintiffs must submit the dispute to arbitration. The language of the agreement reserves CMH's right to unlimited discretion in choosing whether to arbitrate. Here, it simply not clear that defendants have promised anything with respect to the arbitration agreement. As a result, the agreement appears illusory because nothing in the agreement limits defendants' discretion in deciding whether to arbitrate, and CMH does not appear to be bound by the arbitration agreement. Absent a mutuality of obligation, there is no consideration:

> Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory.

*Id.* (quoting 1 SAMUEL WILLISTON, CONTRACTS § 43 at 140 (3d ed. 1957).

The parties have not briefed whether the arbitration agreement at issue is unenforceable on the ground that it is illusory. Without the benefit of adversary briefing, I am not in a position to determine whether CMH's agreement to arbitrate is illusory. If defendants believe that their discretion is so limited as to constitute adequate consideration, defendants may renew their motion to compel to arbitration. Defendants' motion to compel arbitration of plaintiff's remaining claims and stay proceedings

17

pursuant to the Federal Arbitration Act is DENIED without prejudice to their renewing the motion.

### V. Conclusion

For the reasons stated above, defendants' March 27, 2012 motions for summary judgment on plaintiff's third claim for violation of the Magnuson-Moss Warranty Act and to compel arbitration of plaintiff's remaining claims and stay proceedings pursuant to the Federal Arbitration Act (doc. 13) is GRANTED in part and DENIED in part. Defendants' motion for summary judgment on plaintiff's third claim for violation of the Magnuson-Moss Warranty Act is GRANTED, and their motion to compel arbitration of plaintiff's remaining claims and stay proceedings pursuant to the Federal Arbitration Act is DENIED.

s/ Mark R. Abel  
United States Magistrate Judge