IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Micaela K. Vermillion and
Bobby L. Burns,

        Plaintiffs

  v.

CMH Homes, Inc., *et al.*,

        Defendants

:
:   Civil Action 2:11-cv-00949
:
:
:   Magistrate Judge Abel
:

# **ORDER**

This matter is before the Court defendants' August 2, 2012 supplemental memorandum in support of their motion to compel arbitration of plaintiffs' remaining claims and stay proceedings pursuant to the Federal Arbitration Act (doc. 24); plaintiffs' August 17, 2012 memorandum in opposition to defendants' supplemental memorandum (doc. 25); and defendants' supplemental reply memorandum (doc. 26).

The Court's July 6, 2012 Order considered defendants' motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act and questioned whether the arbitration was unenforceable on the ground that it was illusory. At that time, the parties had not briefed whether the arbitration agreement at issue is unenforceable on the ground that it is illusory. The parties were invited examine the issue and present arguments, which are now before the Court.

1

I.      Allegations in the Complaint

CMH Homes, Inc. ("CMH Homes") manufactures, builds, sells, finances, leases, insures and warrants manufactured and modular homes. Compl. at ¶ 4. Freedom Homes, an authorized agent and representative of CMH Homes, sells, warrants, and designs manufactured and modular homes. *Id.* at ¶¶ 6-7.

In March 2004, plaintiffs entered into an agreement to purchase a Freedom Homes custom built home. *Id.* at ¶ 19. The Freedom Homes manager informed plaintiffs that a Nantucket model had been ordered for display purposes and that adjustments could be made upon its arrival "to make it their dream home." *Id.* at ¶¶ 22-23.  Defendant represented to plaintiffs that by purchasing the display model home, it would be a "turn-key operation," allowing for quicker installation and an accelerated move-in for plaintiffs. *Id.* at ¶ 24. Plaintiffs agreed to purchase the display model. *Id.* at ¶ 25.

On May 27, 2004, plaintiffs placed an order through Freedom Homes for the home. *Id.* at ¶ 27. Plaintiffs entered into a "Retailer Closing Agreement." *Id.* at ¶ 28. The Agreement provided that Dennis Excavating and Performance Plumbing and Heating were the subcontractors that would complete the excavation and basement required for installation of the home. *Id.* at ¶ 31. In July 2004, defendant steered plaintiff to its contractor, Riggs Excavating, Inc. to perform the excavation. *Id.* at ¶ 33.

Throughout the construction process, defendant buried and/or burned all the garbage related to the construction and installation of the home rather than using a

2

trash receptacle forcing plaintiffs to install gravel to repair the damage that resulted. *Id.* at ¶¶ 38-39.

A November 2004 inspection of the house revealed numerous concerns involving the vapor barrier in the attic, the grading and drainage of the ground and land water, and the insulation. *Id.* at ¶ 40. Defendant assured plaintiffs that all of the deficiencies would be remedied prior to the move-in date *Id.* at ¶ 41.

After moving into the home, plaintiffs noted water gathering in the front yard, the smell of mold throughout the home, cracks in the ceiling, and splitting and cracking of the hardwood and tile floors. *Id.* at ¶ 47. During the summer of 2005, plaintiffs' children were unable to use their bedrooms upstairs because the temperatures reached over 100 hundred degrees in the second story. *Id.* at ¶ 48. In February 2006, the second floor could not be used because of the inability to heat it. *Id.* at ¶ 53. Over the course of the next two years, defendants contracted with various companies to perform repairs or attempt to repair the multiple problems experienced by plaintiffs. *Id.* at ¶ 55.

In 2006, defendants attempted to coerce plaintiffs into signing a release of responsibility. *Id.* at ¶ 60.

Plaintiffs sought an independent inspection of the house. *Id.* at ¶ 66. The inspection revealed numerous substantial structural problems. *Id.* at ¶ 67. Plaintiffs learned that the condition of the second floor was affected by the unrepaired structural problems, which worsened due to the lack of ventilation and mold infestation, rendering the second floor unusable by the summer of 2011. *Id.* at ¶ 68.  On June 2, 2009,

defendants hired a professional engineer, Gene Smithberger. Mr. Smithberger opined that the home was not anchored to its foundation and was "free to move." *Id.* at ¶ 70.

The complaint alleges claims for breach of contract, negligent misrepresentation, breach of the Magnuson-Moss Warranty, negligent construction, fraud, breach of implied warranty, negligence, negligence per se, and fraudulent concealment.

## II. Arguments of the Parties

### A. Defendants

Defendants argue that paragraph 5 of the agreement, which allows the holder of the contract the option of filing a foreclosure action without waiving either party's right to compel arbitration, is a judicial "carve-out" that is necessary in circumstances where a loan default occurs and there is a need to protect collateral and the interests of third parties who did not sign the arbitration agreement. Arbitrators lack authority to exercise jurisdiction over all parties with interests in the collateral who are not signatories to the arbitration agreements, such as third party lienholders. Defendants also maintain that arbitrators lack the authority to decide controversies involving the title to or the possession of real estate.

Defendants also argue that Ohio law does not require mutuality of obligation in an arbitration provision. According to defendants, complete mutuality is not a requirement of a valid arbitration clause if consideration supports the underlying contract. Defendants maintain that there is no dispute that the underlying purchase agreement was supported by consideration, and, therefore, the arbitration provision is

4

enforceable.

### B. Plaintiffs

Plaintiffs argue that the arbitration clause gives defendants the unfettered right to choose the nature of the forum, hence promising nothing at all and rendering the clause illusory and unenforceable. Plaintiffs rely on *Bennett v. CMH Homes, Inc.*, Case no. 3:08-cv-01212 (M.D. Tenn. March 11 2009), in which the same clause at issue in this case was found unenforceable. Plaintiffs contend that defendants' reliance on *Fazio v. Lehman Bros.* is misplaced because it relies on cases where an arbitration clause contained an opt-out provision. No such opt-out provision is contained in the arbitration clause at issue in this case. Plaintiffs maintain that cases with out-opt and notice provisions are distinguishable from this case. Courts have concluded that a clause providing "advance notice" may be deemed to supply adequate consideration; however the absence of providing something of value shows that the defendants did not truly bind themselves to the arbitration process.

Plaintiffs argue that *Fazio* requires that an arbitration clause be analyzed independently from the agreement to determine its validity. Plaintiffs contend that defendants seek to bind the plaintiffs, while reserving for themselves the unfettered right to select between forums to resolve disputes.

Plaintiffs further argue that a carve-out provision is contrary to the FAA. Although defendants contend that access to the judicial process for the holder of the arbitration clause is necessary, the clause permits the defendants access to the court

5

under all circumstances and is not limited to a foreclosure action. Plaintiffs also maintain a categorical rule prohibiting arbitration of a particular type of claim is contrary to the terms and coverage of the FAA.

### III.    Discussion

By enacting the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Congress declared a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements. . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Notwithstanding this policy, arbitration is a matter of contract, and a party cannot be forced to submit to arbitration when he has not agreed to resolve a dispute in this manner. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). Section 2 of the Federal Arbitration Act makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts examine the language of a contractual arbitration clause in light of the strong federal policy favoring arbitration. *Stout v. J.D. Byrider,* 228 F.3d 709 (6th Cir. 2000) citing *Soler Chrysler-Plymouth*, 473 U.S.614, 626 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1 990). Any

ambiguities in an arbitration clause, or doubts as to the parties' intentions, should be resolved in favor of arbitration. *Soler Chrysler-Plymouth*, 473 U.S. at 626.

When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). To determine whether the parties have entered into a valid arbitration agreement, courts apply state law concerning the validity, revocability and enforceability of contracts. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002). Defenses to an arbitration clause include fraud, duress, or unconscionability. *Id.*

The Retailer Closing Agreement contains the following arbitration agreement:

Buyer and Retailer hereby enter into the following arbitration agreement:

1. Any and all claims for liability, damages or expenses arising out of or in connection with the home, the contract, or any warranties, representations, or agreements relating thereto (hereinafter referred to as "Claims") shall be resolved through binding arbitration in accordance with the American Arbitration Association's commercial arbitration rules before a single arbitrator licensed to practice law in the state in which the home is sold.
2. Each party in such arbitration shall bear their own expenses, and shall be permitted to depose one individual and any expert witness designated by another party.
3. Judgment on the arbitrators' award may be entered in any court of

        competent jurisdiction.
4. This agreement is for the benefit of not only the parties hereto but also the manufacturer of the home, the holder of the contract, any provider of insurance pursuant to the contract, and their respective directors, officers, employees, agents, subsidiaries, affiliates, successors, assigns and insurance carriers.
5. Notwithstanding anything contained herein, the holder of the contract retains an option to use the judicial or non-judicial relief afforded in the contract and pursuant to applicable laws for the repossession of the home or the recovery of monetary obligations or other security interests held by such holder, which proceedings by the holder shall not constitute a waiver of any party's right to compel arbitration of claims hereunder.
6. The parties hereby voluntarily waive any right to trial by judgment or jury.

Doc. 3-3 at 3. Plaintiffs argue that the arbitration clause is unconscionable and unenforceable.

In considering the enforceability of the arbitration clause, I reviewed *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) and *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003).[1] In *Floss*, the Sixth Circuit recognized that courts examine applicable state law contract principles to determine whether an agreement to arbitrate is enforceable.

---

[1] In *Morrison*, the Sixth Circuit distinguished the case from *Floss* by determining that the arbitration agreement was supported by sufficient consideration. Under the agreement, Circuit City had the power to alter or terminate the agreement on December 31 of each year upon giving thirty days' notice to its employees. The *Morrison* Court held that the timing provision, which only permitted Circuit City to unilaterally amend the agreement on a specified date, was enough of a limitation on Circuit City's ability to amend the agreement to constitute consideration. Circuit City did not retain unfettered discretion in deciding whether to unilaterally amend the agreement. Rather, Circuit City could only do so on one day of the year after providing thirty days' notice of its intent to do so.

Under general contract principles "a promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof." *Id.* at 315. A promise constitutes consideration for another promise only when it creates a binding obligation. Without mutuality of obligation, the contract lacks consideration. If the contract does not bind both parties, then neither party is bound.

The contract at issue concerns the sale of the house. Plaintiffs' obligations under the contract are monetary obligations. Defendants' obligations under the contract concern the manufacture and installation of the home. In the event of any breach by plaintiffs of their obligations under the contract, defendants retain "an option to use the judicial or non-judicial relief afforded in the contract" for those breaches. Plaintiffs, however, have no such option. In the event of a breach of defendants' obligations, plaintiffs must submit the dispute to arbitration. The language of the agreement reserves CMH's right to unlimited discretion in choosing whether to arbitrate.

Defendants rely on *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444 (6th Cir. 2005). In *Glazer*, the Sixth Circuit examined the "severability" of arbitration provisions under *Prima Pain Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967). The Sixth Circuit found that the district court erred in holding that arbitration provisions were treated as separate contracts, distinct from the broader agreements at issue. The question before the Sixth Circuit was whether Section 2 of the FAA, providing that an arbitration clause "shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract," means that an arbitration provision is

9

actually a separate contract or is merely to be examined separate from the overall contract issue for the limited purpose of determining arbitrability. Under *Prima Paint*, a federal court may only consider issues relating to the making and performance of the agreement to arbitrate. The *Glazer* Court acknowledged that the Sixth Circuit has "interpreted *Prima Paint* to mean that arbitration clauses are 'separable' from the contracts in which they are included when examining whether those provisions were fraudulently induced." *Glazer* at 452. The *Glazer* Court stated that arbitration provisions are not "severable" to the extent that they should be considered separate and distinct contracts outside the underlying agreement. Based on this finding, the Sixth Circuit noted that "mutuality" is not a requirement of a valid arbitration clause, and because an arbitration clause is not a separate and distinct contract, it does not have be supported by independent consideration. *Id.* at 453. Moreover, in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396-397 (6th Cir. 2003), the Sixth Circuit noted that some Ohio courts have held that mutuality is not a requirement of a valid arbitration clause if the underlying contract is supported by consideration. *See Joseph v. M.B.N.A. Am. Bank, N.A.*, 148 Ohio App. 3d 660, 664, 775 N.E.2d 550, 553 (2002). The *Fazio* Court also noted that this conclusion appeared to be the general trend. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179-80 (3rd Cir.1999) (collecting cases and concluding that mutuality of obligation is generally satisfied in arbitration agreements if the underlying contract is supported by consideration)

  This Court is bound by the decisions of the Sixth Circuit. Under Sixth Circuit

10

precedent, if the underlying contract is supported by consideration, mutuality is not a requirement of a valid arbitration clause. Here, there is no question that the underlying contract was supported by consideration. As a result, defendants' March 27, 2012 motion to compel arbitration of plaintiffs' remaining claims and stay proceedings pursuant to the Federal Arbitration Act (doc. 13) is GRANTED.

The Clerk of Court is DIRECTED to administratively close this case. Either party may file a motion to reopen the case following arbitration.

s/ Mark R. Abel
United States Magistrate Judge
